

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 15, 1947

Hon. L. A. Woods
State Superintendent of Public Instruction
Department of Education
Austin, Texas

Attn:  Hon. T. M. Trimble,       Opinion No. V-375.
       First Assistant

                              Re:  Status of school
                                   districts newly
                                   created by consoli-
                                   dation, grouping, or
                                   annexation with re-
                                   gard to taxation,
                                   valuation, and State
                                   aid purposes.

Dear Sir:

        We refer to your letter of recent date request-
ing an opinion from this office concerning the following
matters and questions stated therein as follows:

        "Where school districts are created by
    consolidation, grouping, or annexation, and
    composed of several original districts whose
    original tax rates vary from nothing to $1.50,
    and whose values vary from county values to
    twice-county values, what is the status of
    such consolidated districts with regard to
    taxes and valuations?

        "1.  Is the district considered a new
    district?

        "2.  Must it vote a new tax?

        "3.  May a uniform assessed property value
    be acceptable in qualifying such a district for
    equalization aid when the value of one part of
    the district is lowered, and the property value
    in another part of the district is raised?"

Where a common school district was duly incorporated into an independent school district, it was held in Pyote Independent School District v. Dyer, 34 S.W. (2d) 578, that no body could levy further maintenance taxes on property of the incorporated district until the new district voted the tax, because the old common school district ceased to exist and all maintenance taxes theretofore voted by it ceased to be in force. Until the new district shall vote such tax in the way and manner provided by law and by the Constitution, no power exists in any tax levying body to levy further taxes on the property of the district.

There is but one exception to this rule. Where, after a change in school districts, or the creation of a new district out of the old district, there has been no provision by assumption of the indebtedness or otherwise for payment of the bonds that are outstanding against the old district, and such facts are certified to the Commissioners' Court by the county school board, it is the duty of the Commissioners' Court to annually levy a tax for the purpose of paying the old bonded indebtedness. Pyote I.S.D. v. Dyer, supra.

Where, after a consolidated district had voted a maintenance tax, the consolidated district was regularly converted into an independent district, it was held in Bigfoot Independent School District v. Genard, 116 S.W. (2d) 805, affirmed by the Supreme Court in 129 S.W. (2d) 1213, that the independent district could not impose the maintenance tax without having first obtained approval of the voters of the new district, notwithstanding the independent district embraced the identical territory which formed the consolidated district. Attorney General Opinion No. O-2808.

Consolidated common and independent school districts are defined by statutes. School districts may under the provisions of Article 2806, V.C.S., be consolidated by an order of the Commissioners' Court when such action has been duly authorized by the qualified voters residing in each district affected, voting separately at an election held in each such district. Articles 2807 to 2815, V.C.S., provide in detail for control and management of the schools in such districts. They differ in many respects from the statutes on the control and management of rural high school districts formed by grouping or annexation under the provisions of Articles 2922a, et seq.

When two or more districts are consolidated under the statutes above referred to, each district loses its separate identity, unless it be for certain limited purposes in connection with taxation concerning bonded indebtedness (Art. 2807), and they together thereafter constitute a single new district as though they had never had separate existence. County Board of School Trustees v. Wilson, 5 S.W. (2d) 805; A. G. Opinion No. O-5462.

But even though school districts have been consolidated with other contiguous school districts, it is the duty of the Commissioners' Court to see that taxes are levied for the purpose of paying the interest, sinking fund, and discharging the principal of the bonded indebtedness of the former school districts, and this even though such districts have gone out of existence. Such tax is to be levied against the territory that was formerly in such old school district, unless, of course, the consolidated district has voted to assume and pay off said outstanding bonds and voted a tax levy therefor as provided in Article 2807, V.C.S. Pyote I. S. D. v. Dyer, supra.

In Attorney General Opinion No. O-2808, citing the Pyote Case as authority, where a common school district had been consolidated with an independent school district, this Department advised that the county tax collector had no authority to collect any taxes for such old common school district except the ones discussed above for purposes of paying off the bonded indebtedness and interest thereon, and that the procedure prescribed in the Pyote case should be followed as to the maintenance taxes that were actually paid; i. e., the new consolidated independent school district should in the future credit the taxpayers with the payment of such tax when such district votes and levies a maintenance tax. When such new district votes and levies a new maintenance tax and gives such taxpayers the credit, then this tax money so collected should at that time be turned over to such new independent school district.

Where a consolidated independent school district wished to value the property of the part that was formerly a common school district at a lesser percentage than the percentage taken of the value of the property that was formerly in the independent school district, this Department advised in its Opinion No. O-2722 that this may not be done because such action would unquestionably be in violation of Section 1 of Article VIII, Constitution of Texas, which reads in part as follows:

"Taxation shall be equal and uniform.
All property in this State, whether owned
by natural persons or corporations, other
than municipal, shall be taxed in proportion
to its value, which shall be ascertained as
may be provided by law. . . ."

Further, the Courts of this State have many
times held that the above quoted provisions of the Con-
stitution require that all property within a taxing unit
be taxed equally and uniformly. Mullins v. Colfax Con-
solidated School District, 18 S.W. (2d) 940; Weatherly
I.S.D. v. Hughes, 41 S.W. (2d) 445; Hunt v. Throckmorton
I.S.D., 59 S.W. (2d) 470; Santa Rosa v. Lyford I.S.D.,
78 S.W. (2d) 1061. A consolidated school district may
not for tax purposes value the property of a portion of
the district at a lesser percentage of its actual value
than the percentage used for the rest of the property of
said district, and the tax rate levied and assessed by
the district must be equal and uniform.

There is a real distinction between a consoli-
dated school district created under the consolidation
statutes and a rural high school district created for
rural high school district purposes under the Rural High
School District Law.

When two or more contiguous common independent
school districts are grouped or annexed to form a rural
high school district in accordance with the provisions
of Article 2922a and/or 2922c, V.C.S., each of such dis-
tricts retained its identity. Separate elementary schools
must be maintained therein. Article 2922f provides that
the elementary districts composing a rural high school
district shall not be consolidated nor abolished by the
county school trustees except upon a vote of the qualified
electors residing therein, unless the daily school attend-
ance for the previous year shall have fallen below twenty.
State v. Cadenhead, 129 S.W. (2d) 743; Trinity I.S.D. v.
District Trustees, 135 S.W. (2d) 1021; Mt. View C.S.D. v.
Blanco County Board, 149 S.W. (2d) 224; Live Oak County
Board v. Whitsett C.S.D., 181 S.W. (2d) 846; Weaver v.
Board of Trustees of Wilson I.S.D., 184 S. W. (2d) 864.

Article 2922L, V.C.S., empowers the board of
trustees of a rural high school district to levy and col-
lect maintenance and bond taxes for said district after
being authorized by an election held for such purpose or
purposes; and also provides:

". . . that the local taxes previous-
ly authorized by a district or districts
included in a rural high school district
. . . shall be continued in force until
such time as a uniform tax may be provided
for the benefit of the rural high school
district."

Under the provisions of said statute, it is
the duty of the board of trustees of the rural high
school district to cause to be levied, assessed, and
collected in each of its constituent districts the same
tax which said districts had previously authorized un-
til such time as a uniform tax has been voted by the
rural high school district.  Also, until the bonded
indebtedness of the elementary districts composing the
rural high school district is assumed by the enlarged
district as authorized under Article 2922h said indebt-
edness remains a charge exclusively against the district
issuing the bonds and the trustees of the enlarged dis-
trict are charged with the duty of levying from year to
year, and collecting a sufficient tax from the district
issuing the bonds, to discharge its obligation.  McPhail
v. Tax Collector (Civ. App.) 280 S.W. 260, error refused;
Attorney General Opinions Nos. 0-5542 and 0-5462; Chas-
tain v. Mauldin, 32 S.W. (2d) 237.

At such a time, however, when a rural high
school district shall have exercised by vote its author-
ity under Article 2922h to assume the bonded indebted-
ness of the elementary school districts composing the
enlarged district and authorize the levy of a tax on the
rural high school district to pay said assumed obliga-
tion, and/or shall have exercised by vote its authority
under Article 2922L to levy and collect a maintenance
tax over the enlarged district, it is our opinion that
the constitutional provisions hereinabove discussed con-
cerning equal and uniform taxation within the taxing
unit would be applicable and would prohibit unequal
taxation within the elementary districts composing the
rural high school district.

Having discussed the status of newly incor-
porated school districts, newly consolidated school dis-
tricts, and newly established rural high school districts
with regard to taxes and valuations of said district
which was necessary in connection with and the applica-
tion of the tax levy provisions of the Equalization Law,

Acts 1947, 50th Leg., R. S., H. B. 295, Article I, Sec. 2, first paragraph, we will now attempt to answer the submitted questions.

In Attorney General's Opinion No. V-328, this Department has previously interpreted the tax levy provisions of H. B. 295. We shall apply the constructions reached therein to the questions here submitted.

With respect to all types of school districts which were created two years or more immediately preceding the year for which it makes its application for State aid under H. B. 295, and presently exist as so created, said districts are subject to and governed by the tax levy provisions of H. B. 295 as construed in Opinion V-328. If they conform to the tax levy provisions as construed therein, they are eligible for State aid, other provisions of the Act having been met.

With respect to newly incorporated school districts, newly consolidated districts, and newly established rural high school districts formed or created within the two-year period immediately preceding the year for which it makes application for State aid under H. B. 295, such school districts should be considered and treated as new school districts in applying the tax levy provisions of said Bill. If said districts as newly established have voted and are collecting a uniform local maintenance tax of 50¢ or more for local operational purposes and qualify under Section 1 of Article I of H. B. 295, they are eligible for State aid, other requirements of the Act having been met. H. B. 295 does not preclude or prohibit any newly created common, independent, consolidated or rural high school district from applying and showing eligibility for State aid. Opinion V-328.

From what we have discussed hereinabove, it follows that a newly incorporated school district or a newly consolidated school district has no authority to levy a local maintenance tax until such a tax has been voted by the new district. Such districts, where no uniform maintenance tax has been voted or where the local maintenance tax voted is less than the 50¢ minimum required under H. B. 295, are not eligible for State aid.

With respect to newly created rural high school districts which have not voted a uniform local maintenance tax as authorized under Article 2922L but under said statute there is being continued in force in the elementary school districts a local maintenance tax of at least

the 50¢ minimum required under H. B. 295, which tax has been previously authorized by the elementary districts composing the rural high school district, such rural high school districts are entitled to State aid under said Bill, other provisions of the Bill having been met.

## SUMMARY

For purposes of applying the provisions of H. B. 295, Acts 1947, newly incorporated school districts, newly consolidated school districts, and newly established rural high school districts created within the two-year period immediately preceding the year for which it makes application for State aid under H. B. 295, should be treated and considered as new districts.

Newly incorporated school districts and newly consolidated school districts have no authority to levy and assess a local maintenance tax until the new district has authorized same by vote.

When a newly incorporated school district, a newly consolidated school district, or a newly established rural high school district has voted a uniform local maintenance tax for local operational purposes at the rate of the minimum 50¢ required under H. B. 295, or more, such districts are entitled to State aid under H. B. 295, other provisions of the Act having been met. It matters not that the local maintenance tax or valuation of the new district is greater or less than was the previous local maintenance tax or valuations in the district or districts composing the newly established district.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Chester T. Ollison*

Chester E. Ollison
Assistant

APPROVED:

*Fagan Dickson*

FIRST ASSISTANT
ATTORNEY GENERAL

CEO:djm